IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARON LEE JOSEPH, | : | |
|     Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | No. 11-2668 |
| Commissioner of the | : | |
| Social Security Administration, | : | |
|     Defendant | : | |
| | : | |

### REPORT AND RECOMMENDATION

TIMOTHY R. RICE                                                                                          April 26, 2012
U.S. MAGISTRATE JUDGE

      Sharon Lee Joseph seeks judicial review of the Administrative Law Judge's ("ALJ") decision rejecting her application for Disability Insurance Benefits ("DIB"). Joseph alleges the ALJ's decision was not supported by substantial evidence because the ALJ failed to: (1) properly evaluate the medical evidence, (2) properly evaluate Joseph's subjective complaints, and (3) incorporate all of Joseph's credibly established limitations in his hypothetical question to the vocational expert. See Plaintiff's Brief and Statement of Issues in Support of Her Request for Review at 2, Joseph v. Astrue, No. 11-2668 (E.D. Pa. July 21, 2011) [hereinafter Plaintiff's Brief].

      After careful review, I find the ALJ's decision was not supported by substantial evidence because the ALJ failed to properly evaluate Joseph's Global Assessment of Functioning ("GAF") scores[1] and other relevant medical evidence. Accordingly, I respectfully recommend Joseph's

---

[1] GAF scores (on a 100-point scale) reflect the mental health specialist's assessment on a particular day of the severity of a patient's mental health, and are necessarily based on the patient's state of mind and self-reported symptoms. Diagnostic and Statistical Manual of Mental Disorders IV-TR 34 (4th ed. Am. Psychiatric Assoc. 2000) [hereinafter DSM IV-TR].

request for review be GRANTED and the matter be REMANDED for further proceedings consistent with this Report and Recommendation.

I.      BACKGROUND

      A.      Procedural History

On December 30, 2008, Joseph protectively applied for DIB, alleging disability since March 5, 2005. R. at 165-68, 255. Her application was denied on February 27, 2009, R. at 117-21, and she timely sought a hearing, R. at 122-23. Joseph was represented by counsel at the August 12, 2009, video hearing, R. at 52, during which she and a vocational expert testified, R. at 53-75. The ALJ kept the record open for thirty days to allow for the consideration of additional evidence. R. at 52-53. On November 2, 2009, the ALJ denied Joseph's claim. R. at 36-49.

The ALJ applied the required five-step sequential analysis.[2] At step one, the ALJ found

---

[2] The Social Security Administration has adopted a system of sequential analysis for the evaluation of disability claims, which is codified at 20 C.F.R. § 404.1520. The steps of the analysis are summarized as follows:

    Step One: If the claimant is working, and if the work is substantial gainful activity, the claimant is not disabled. If the claimant is not working or is not engaging in substantial gainful activity, the analysis proceeds to Step Two. 20 C.F.R. § 404.1520(a)(4)(i).

    Step Two: If the claimant has no severe impairment and no severe combination of impairments that significantly limits his physical or mental ability to do basic work activity, the claimant is not disabled. If there is a severe impairment or severe combination of impairments, the analysis proceeds to Step Three. 20 C.F.R. § 404.1520(a)(4)(ii).

    Step Three: If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 to Subpart P of 20 C.F.R. Part 404, the claimant is disabled. Otherwise, the analysis proceeds to Step Four. 20 C.F.R. § 404.1520(a)(4)(iii).

    Step Four: If the claimant retains the residual functional capacity to perform her past relevant work, the claimant is not disabled. If the claimant cannot do the kind of work she performed in the past, the analysis proceeds to Step Five. 20 C.F.R. § 404.1520(a)(4)(iv).

Joseph had not engaged in substantial gainful activity from March 5, 2005, through her date last insured of September 30, 2009.  R. at 42.  At step two, the ALJ found Joseph suffers from three severe impairments: bipolar disorder, anxiety disorder, and history of alcohol abuse.  Id.  At step three, the ALJ found none of Joseph's impairments, nor any combination thereof, met or medically equaled any of the listed impairments.[3]  R. at 42-45.  The ALJ then found Joseph had the residual functional capacity ("RFC")[4] to perform "a full range of work at all exertional levels but with the following nonexertional limitations: no significant contact with the public; limited to simple instructions or repetitive work."  R. at 45.  At step four, the ALJ found Joseph could not perform her past relevant work.  Id.  Finally, relying on a vocational expert's response to a hypothetical question, the ALJ found at step five "there were jobs that existed in significant numbers in the national economy" that Joseph, at her RFC, could have performed, including small parts assembler, hand packer, assembler, and telemarketer.  R. at 47-48.  The ALJ accordingly found Joseph was "not disabled."  R. at 48.

---

Step Five: If the claimant's residual functional capacity, age, education, and past work experience, considered in conjunction with the criteria listed in Appendix 2 to Subpart P of 20 C.F.R. Part 404, would permit the claimant to adjust to other work, the claimant is not disabled.  Otherwise, the claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(v).

[3] The Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 is a regulatory device used to streamline the decision-making process by identifying those claimants whose medical impairments are so severe they would be found disabled regardless of their vocational background.  Sullivan v. Zebley, 493 U.S. 521, 532 (1990).  The Listing defines impairments that would prevent an adult, regardless of age, education, or work experience, from performing any gainful activity, substantial or otherwise.  Id.; 20 C.F.R. § 404.1525(a).  The Listing was designed to operate as a presumption of disability, making further inquiry unnecessary.  Sullivan, 493 U.S. at 532.

[4] Joseph's RFC reflects "the most [she] can still do [in a work setting] despite [her] limitations."  20 C.F.R. § 404.1545(a).

Joseph appealed the ALJ's decision to the Appeals Council, R. at 33-34, which denied her request for review on March 17, 2011, R. at 1-5.

B.     Factual History

Joseph was fifty-two years old as of her date last insured.[5]  R. at 47.  She completed high school and attended some college.  R. at 54.  She had past relevant work experience as a teachers' aide, secretary, and floral assembler; the Commissioner concedes that she can no longer perform any of her past jobs.  R. at 47, 68-69.  She lives alone.  R. at 63-65, 269.

Joseph claimed disability due to symptoms and functional limitations caused by her bipolar disorder, anxiety/panic disorder, depression, personality disorder, and alcohol abuse.  R. at 387, 879, 925, 964.

Dr. Richard A. Weiss conducted a consultative examination of Joseph on February 7, 2006.  R. at 386-92.  He noted she was a "bipolar-type individual who gets very easily upset."  R. at 387.  Dr. Weiss described Joseph as looking "extremely tired and physically exhausted."  Id.  He also noted she "was alert and oriented to her surroundings."  Id.  He diagnosed Joseph with Bipolar II Disorder ("recurrent major depressive episodes with hypomanic episodes").[6]  Id.  He

---

[5] Joseph is considered a "[p]erson closely approaching advanced age" under the Commissioner's regulations, which define a person closely approaching advanced age as a person between the ages of fifty and fifty-four.  See 20 C.F.R. § 404.1563(d).  Age is considered one of the relevant factors in determining whether a claimant can adjust to other work in the national economy.  Advancing age is "an increasingly limiting factor in the person's ability to make such an adjustment."  Id. § 404.1563(a).  The Commissioner's regulations note that the Social Security Administration "will consider that [a claimant's] age along with a severe impairment(s) and limited work experience may seriously affect [the claimant's] ability to adjust to other work."  Id. § 404.1563(d).

[6] Bipolar II Disorder is "the occurrence of one or more major depressive episodes accompanied by at least one hypomanic episode."  DSM-IV-TR at 392.  A hypomanic episode is
   a distinct period during which there is abnormally and persistently elevated,

also diagnosed "[s]erious impairment in social and occupational functioning" and assigned a GAF score of fifty.[7]  Id.  He assessed marked limitations in several work-related functions, including the following areas: "[u]nderstand and remember detailed instructions," "[c]arry out detailed instructions," "[m]ake judgments on simple work-related decisions," and "[i]nteract appropriately with co-workers."[8]  R. at 390.  He also assessed extreme limitations in "[r]espond[ing] appropriately to work pressures in a usual work setting."[9]  Id.  He noted that, "[w]ith medication and therapy, [Joseph] is capable of working on a sustained basis, as far as could be determined by examiner."  Id.  He opined Joseph's alcohol abuse did not contribute to any of her impairments.  R. at 391.

Dr. Anthony Fischetto conducted a consultative examination of Joseph on August 16, 2007.  R. at 876-82.  He noted Joseph "came in crying, frazzled, sweaty, distraught" and was "somewhat disheveled."  R. at 876.  Joseph reported being on Depakote, Trazodone, Effexor,

---

      expansive, or irritable mood that lasts at least 4 days.  This period of abnormal mood must be accompanied by at least three additional symptoms from a list that includes inflated self-esteem or grandiosity (nondelusional), decreased need for sleep, pressure of speech, flight of ideas, distractibility, increased involvement in goal-directed activities or psychomotor agitation, and excessive involvement in pleasurable activities that have a high potential for painful consequences. . . .
Id. at 365.

    [7] A GAF score in the range of forty-one to fifty indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM IV-TR at 34.

    [8] The form defined marked limitations as follows: "There is a serious limitation in this area.  The ability to function is severely limited but not precluded."  R. at 389.

    [9] The form defined extreme limitations as follows: "There is major limitation in this area.  There is no useful ability to function in this area."  R. at 389.

clonidine, and Xanax.[10]  R. at 877.  Dr. Fischetto observed Joseph's "[p]roductivity of thought was slow" and "[c]ontinuity of thought was goal directed."  R. at 879.  He assessed her memory as average, and her immediate retention and recall as good.  Id.  He diagnosed Joseph with bipolar disorder, major depressive disorder, alcohol abuse and polysubstance abuse, and borderline personality disorder.  Id.  He assessed her prognosis as "guarded," stating Joseph needed "ongoing psychiatric and psychological help and drug and alcohol treatment."  R. at 880.  He assigned a GAF score of fifty.  R. at 879.  He assessed marked limitations in the following work-related functions: "[r]espond appropriately to work pressures in a usual work setting" and "[r]espond appropriately to changes in a routine work setting."  R. at 881.  He opined Joseph's alcohol and substance abuse "impair[ed] her functioning," and concluded: "If she stops drugs and alcohol and gets the proper help, she can improve her coping skills."  R. at 880.

On February 19, 2009, Dr. Fischetto conducted a second consultative examination of Joseph.  R. at 921-28.  He described her appearance as "somewhat frazzled" and "somewhat disheveled, somewhat distraught, crying at times."  R. at 921-22.  He assessed her productivity of thought as slow and continuity of thought as goal-oriented.  R. at 924.  He diagnosed her with bipolar disorder, panic disorder without agoraphobia,[11] history of alcohol and drug abuse, and

---

[10] Depakote is "used in the treatment of manic episodes associated with bipolar disorder . . . ."  Dorland's Illustrated Medical Dictionary 497, 565 (31st ed. 2007) [hereinafter Dorland's].  Trazodone is "an antidepressant used to treat major depressive episodes with or without prominent anxiety."  Id. at 1983.  Effexor is "used as an antidepressant and antianxiety agent."  Id. at 602, 2074.  Clonidine is used in the treatment of several symptoms, including anxiety.  Id. at 379.  Xanax is used to treat anxiety and panic disorders.  Id. at 55, 2113.

[11] Panic disorder is "the presence of recurrent, unexpected Panic Attacks followed by at least 1 month of persistent concern about having another Panic Attack, worry about the possible implications or consequences of the Panic Attacks, or a significant behavioral change related to the attacks."  DSM-IV-TR at 433-34.  A patient may be diagnosed with either panic disorder with

borderline personality disorder.  R. at 925.  He assessed her prognosis as "fair" and opined that she could benefit from ongoing psychiatric and psychological help.  Id.  He described her "[c]oncentration, persistence, and pace" as "poor" and assigned a GAF score of fifty.  R. at 925-26.  He did not assess any marked or extreme limitations in work-related functions, finding only moderate limitations in the following areas: "[r]espond appropriately to work pressures in a usual work setting" and "[r]espond appropriately to changes in a routine work setting."[12]  R. at 927.  He did not make any findings with respect to drugs or alcohol impairing her functionality.  R. at 928.

From March 2009 through July 2009, Joseph received treatment at the Lehigh Valley Mental Health Clinic ("LVMC").[13]  R. at 954-64.  LVMC's nurse practitioner Cindy Himpler described Joseph's eye contact, speech, and perception as normal, but her concentration as poor.  R. at 963.  In a July 15, 2009, letter, Dr. David Schwendeman of LVMC diagnosed Joseph with bipolar disorder, alcohol dependence, and personality disorder; he assigned a GAF score of fifty.

---

agoraphobia or panic disorder without agoraphobia .  Id. at 434.  Agoraphobia is "anxiety about being in places or situations from which escape might be difficult (or embarrassing) or in which help may not be available in the event of having a Panic Attack or panic-like symptoms."  Id. at 432.

[12] The form defined moderate limitations as follows: "There is moderate limitation in this area, but the individual is still able to function satisfactorily."  R. at 389.

[13] Joseph continued treatment at LVMC after July 2009.  However, the latest medical evidence submitted by LVMC to the ALJ at the time of his decision was sent on July 15, 2009.  R. at 77, 986.  When determining whether the ALJ's decision was supported by substantial evidence, I must consider the record as it existed before the ALJ at the time he issued his decision.  See Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001) ("[W]hen the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand[,] based on the record that was made before the ALJ.").  Thus, the Commissioner's references to Joseph's treatment after the ALJ's decision may not impact my decision.  See Defendant's Response to Request for Review of Plaintiff at 9 n.3, Joseph v. Astrue, No. 11-2668 (E.D. Pa. July 21, 2011) [hereinafter Commissioner's Brief].

R. at 77, 986.  Dr. Schwendeman and nurse practitioner Himpler also noted Joseph had "been unfit to return to work of any kind," and they "expected [this] to continue indefinitely." Id.  They assessed her prognosis for recovery as "poor/guarded." Id.

II.     DISCUSSION

    A.     Legal Standard

I must determine whether substantial evidence supports the Commissioner's final decision.  42 U.S.C. § 405(g); Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 633 (3d Cir. 2010); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).  The factual findings of the Commissioner must be accepted as conclusive if they are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971) (citing 42 U.S.C. § 405(g)); Smith, 631 F.3d at 634 (same); Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 503 (3d Cir. 2009) (same); Rutherford, 399 F.3d at 552 (same).  "Substantial evidence is 'more than a mere scintilla.'"  Diaz, 577 F.3d at 503 (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)); see also Smith, 631 F.3d at 633.  It is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson, 402 U.S. at 401 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Smith, 631 F.3d at 633; see also Diaz, 577 F.3d at 503.

I may not weigh the evidence or substitute my own conclusion for that of the ALJ. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002).  I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions.  Diaz, 577 F.3d at 506. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently.  Fargnoli v. Massanari, 247 F.3d 34,

38 (3d Cir. 2001). At the same time, however, I must remain mindful that "'leniency [should] be shown in establishing claimant's disability.'" Reefer, 326 F.3d at 379 (alteration in original) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

In addition, I retain "plenary review over the ALJ's application of legal principles." Payton v. Barnhart, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995)). Thus, I can overturn an ALJ's decision based on an incorrect legal standard even if I find it was supported by substantial evidence. Id. (citing Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983)).

A claimant is disabled if she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505; see also Diaz, 577 F.3d at 503. The claimant satisfies her burden by showing an inability to return to her past relevant work. Rutherford, 399 F.3d at 551; Plummer, 186 F.3d at 428. Once this showing is made, the burden shifts to the Commissioner to show the claimant, given her age, education, and work experience, has the ability to perform specific jobs existing in the economy. 20 C.F.R. § 404.1520(a)(4)(v); Smith, 631 F.3d at 634; Rutherford, 399 F.3d at 551.

    B.    Joseph's Claims

        1.    Failure to Properly Evaluate the Medical Evidence

Joseph contends the ALJ's opinion was not supported by substantial evidence because the ALJ failed to mention her GAF scores of fifty, failed to mention Dr. Weiss' report, failed to explain what weight he accorded Dr. Fischetto's reports, and improperly granted limited

9

probative value to the opinions of Dr. Schwendeman and nurse practitioner Himpler.  Plaintiff's Brief at 6-8.  The Commissioner maintains the ALJ's opinion was supported by substantial evidence because Dr. Schwendeman and nurse practitioner Himpler treated Joseph for only a few months, the reports of Drs. Weiss and Fischetto support the ALJ's decision, and the failure to mention GAF scores was harmless error.[14]  Commissioner's Brief at 6-17.  The ALJ's decision, however, does not sufficiently analyze the relevant medical evidence and explain how it was weighed.  This failure justifies remand.

The ALJ has the duty to evaluate all relevant evidence in the record.  Fargnoli, 247 F.3d at 41; Burnett, 220 F.3d at 121; Cotter v. Harris, 642 F.2d 700, 704, 706 (3d Cir. 1981).  The ALJ may not make speculative inferences from medical evidence, see, e.g., Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981), and cannot reject evidence for no reason or for the wrong reason, Diaz, 577 F.3d at 505.  Therefore, the ALJ must explain the evidence supporting his findings and the reasons for discounting the evidence he rejects.  Id. at 505-06; Cotter, 642 F.2d at 705-06.  This permits a reviewing court to determine whether significant probative evidence was improperly rejected or simply ignored.  Burnett, 220 F.3d at 121; Cotter, 642 F.2d at 706-07.

A treating source's opinion is entitled to controlling weight when it is supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record.[15]  See 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL

---

[14] The Commissioner selectively cites to the doctors' reports in an effort to show the ALJ's opinion was supported by substantial evidence.  See Commissioner's Brief at 6-17.

[15] A treating source is a "physician, psychologist, or other acceptable medical source" who provides a patient with "medical treatment or evaluation," and has an "ongoing treatment relationship" with the patient.  20 C.F.R. § 404.1502.  A medical source may be considered a treating source where the claimant sees the source "with a frequency consistent with accepted

374188 (July 2, 1996).  A treating source's opinion may be rejected "on the basis of contradictory medical evidence," Plummer, 186 F.3d at 429, or if unsupported by sufficient clinical data, Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985).  The opinion may be accorded "more or less weight depending upon the extent to which supporting explanations are provided."  Plummer, 186 F.3d at 429 (citing Newhouse, 753 F.2d at 286).  Where a treating source's opinion is not given controlling weight, the ALJ must determine what weight to give the relevant medical sources by considering factors such as the length of the treatment relationship and frequency of visits, nature and extent of the treatment relationship, whether the medical source supports the opinion with medical evidence, whether the opinion is consistent with the medical record, and the medical source's specialization.  20 C.F.R. § 404.1527(c).  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion."  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).  The ALJ may not ignore medical evidence in favor of his own conclusions.  Van Horn v. Schweiker, 717 F.2d 871, 874 (3d Cir. 1983).

      Furthermore, a doctor's "observations that [a patient with a mental illness] is 'stable and well controlled with medication' during treatment does not support the medical conclusion that [the patient] can return to work."  Morales, 225 F.3d at 319.  For such patients, stability in the home or in a treating facility does not necessarily translate to stability in a work environment and may not justify a conclusion that the patient could return to work.  See id. (highlighting "[t]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts[,

---

medical practice for the type of treatment . . . required for [the claimant's] condition(s)."  Id.

11

which] is especially profound in a case involving a mental disability").

Although a claimant's GAF score does not have a "direct correlation to the severity requirements," Dougherty v. Barnhart, No. 05-5383, 2006 WL 2433792, at *9 (E.D. Pa. Aug. 21, 2006) (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01, 50764-65 (Sept. 20, 2000)), "GAF scores are used by mental clinicians and doctors to rate the social, occupational, and psychological functioning of adults," West v. Astrue, No. 09-2650, 2010 WL 1659712, at *4 (E.D. Pa. Apr. 26, 2010) (citing Irizarry v. Barnhart, 233 F. App'x 189, 190 n.1 (3d Cir. 2007)); see also Dougherty, 2006 WL 2433792, at *9 (GAF is "the scale used by mental health processionals to 'assess current treatment needs and provide a prognosis'") (quoting 65 Fed. Reg. at 50764).  A GAF score, therefore, "constitutes medical evidence accepted and relied upon by a medical source and must be addressed by an ALJ in making a determination regarding a claimant's disability." Watson v. Astrue, No. 08-1858, 2009 WL 678717, at *5 (E.D. Pa. Mar. 13, 2009) (emphasis omitted) (citing Colon v. Barnhardt, 424 F. Supp. 2d 805, 812 (E.D. Pa. 2006)); Dougherty, 2006 WL 2433792, at *9.  A GAF score in the range of forty-one to fifty indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM IV-TR at 34.

Failure to mention or discuss GAF scores in the forty-one to fifty range merits remand. See, e.g., West, 2010 WL 1659712, at *6 ("[C]ase law in this district . . . [indicates] that remand is necessary where an ALJ fails to specifically discuss or examine a claimant's GAF scores."); Sojourner v. Astrue, No. 09-5662, 2010 WL 4008558, at *5 (E.D. Pa. Oct. 12, 2010) ("There are

a long line of cases in the Eastern District requiring remand when an ALJ fails to explicitly address GAF scores in the 41-50 range."); Watson, 2009 WL 678717, at *6 ("[C]ase law from this district is . . . explicit that a remand is necessary when an ALJ fails to specifically discuss GAF scores."); Dougherty, 2006 WL 2433792, at *9 ("Because a GAF constitutes medical evidence accepted and relied upon by a medical source, it must be addressed by an ALJ in making a determination regarding a claimant's disability."); Span ex rel. R.C. v. Barnhart, No. 02-7399, 2004 WL 1535768, at *6 (E.D. Pa. May 21, 2004) (remanding on basis that "ALJ provid[ed] no explanation for discounting the significance of [plaintiff's] GAF scores").[16]

In West, the plaintiff received five GAF scores in the forty-one to fifty range and two GAF scores above fifty. 2010 WL 1659712, at *4. "Clearly," the court noted, "the five GAF

---

[16] The few cases in which an ALJ's opinion was affirmed despite a failure to mention GAF scores are distinguishable:

In Rios v. Astrue, for example, the ALJ mentioned a GAF score of fifty-to-fifty-five but failed to mention two additional GAF scores of fifty. No. 09-5004, 2010 WL 3860458, at *8 (E.D. Pa. Sept. 30, 2010), aff'd Rios v. Comm'r Soc. Sec., 444 F. App'x 532, 535 (3d Cir. 2011). The court in Rios explicitly distinguished West, Watson, Robleto, and Dougherty, where the ALJs either failed to address GAF scores at all or cherry-picked higher scores. Id. Like the ALJs in West and Dougherty, the ALJ here failed to mention any GAF scores indicating serious symptoms.

In Purnell v. Astrue, 662 F. Supp. 2d 402 (E.D. Pa. 2009), the ALJ failed to mention a treating physician's GAF score of fifty, but the treating physician found only mild or moderate limitations in certain categories and no marked or extreme limitations for any categories. Id. at 414-15. Here, Joseph received multiple GAF scores of fifty and was diagnosed with marked or extreme limitations in multiple categories. See R. at 77, 387, 390, 879, 881, 925, 986.

In Hendrickson v. Astrue, No. 07-05345, 2008 WL 3539621 (E.D. Pa. Aug. 11, 2008), the ALJ failed to mention a GAF score of forty-five to forty-eight but mentioned and discussed three subsequent GAF scores of fifty issued by the same physician. Id. at *4. Here, the ALJ failed to discuss GAF scores at all.

In Gilroy v. Astrue, 351 F. App'x 714 (3d Cir. 2009), an ALJ's failure to mention or discuss a one-time GAF score of forty-five did not require remand where there was only one GAF score and it was not accompanied by any reports or notes indicating impairment. Id. at 716. Joseph's multiple unmentioned GAF scores of fifty appear in physicians' notes describing marked and extreme limitations. See R. at 390, 881.

scores of 50 or below received by Plaintiff indicate serious symptoms." Id. at *6. Although the ALJ in West "provided an explanation regarding the evidence upon which she relied," she failed to disclose reasons for not considering the five GAF scores of fifty or below. Id. The court explained the significance of this failure:

> For this reason, the Court is unable to conclude that the ALJ's disability determination is supported by substantial evidence, and remands the case for consideration of plaintiff's GAF scores in conjunction with the other mental health evidence in the record and their effect on her RFC.

Id.; see also Dougherty, 2006 WL 2433792, at *10 (remanding where plaintiff received three GAF scores of forty and two scores above fifty because, "while ALJ provided an explanation regarding the evidence he relied upon, she [sic] simply failed to disclose any reasons" for omitting GAF score evidence). Thus, failure to disclose and discuss the significance of GAF scores of fifty or below constitutes an independent basis for remand even assuming an ALJ provides an explanation of the evidence upon which he relied.

Similarly, the court in Span remanded for failure to discuss GAF scores. In Span, a treating psychiatrist determined the plaintiff was psychotically depressed but that his condition improved with medication. 2004 WL 1535768, at *5. The same treating psychiatrist assigned the plaintiff GAF scores of forty to forty-five and forty-five to fifty. Id. at *7. The plaintiff's GAF scores never rose above fifty. Id. at *6-7. The court noted the ALJ had relied on the psychiatrist's reports but had, in fact, focused "only on certain, positive portions of [the] reports." Id. at *8. The ALJ ignored the psychiatrist's GAF scores, however, which indicated "serious symptoms and/or difficulty in social, occupational, or social functioning." Id. The court found this failure required remand, noting: "Although the ALJ did provide an explanation regarding the evidence he relied upon, he did not disclose his reasons for discounting other evidence." Id.

(citing Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994)).[17]

Here, Dr. Weiss, Dr. Fischetto, Dr. Schwendeman, and nurse practitioner Himpler all assigned Joseph GAF scores of fifty on various occasions. R. at 77, 387, 879, 925, 986. Such scores suggest "serious symptoms." See, e.g., West, 2010 WL 1659712, at *6 (remanding for failure to discuss GAF scores despite concluding that ALJ explained reasoning for decision); Dougherty, 2006 WL 2433792, at *10 (same); Span, 2004 WL 153568, at *8 (same).

By failing to mention GAF scores, the ALJ provided no basis for me to evaluate the extent to which the GAF scores were credited or discredited. See, e.g., Span, 2004 WL 1535768, at *8 ("[B]ecause the ALJ failed to adequately explain how or why he discounted the significance of [plaintiff's] GAF scores and specifically what evidence was inconsistent with them, the Court cannot conclude that his determination . . . is supported by substantial evidence."). Accordingly, remand is necessary.

The ALJ also discredited the opinions of Dr. Schwendeman and nurse practitioner Himpler. R. at 46-47. He noted "[t]hese opinion reports [were] based on a limited treatment relationship of a few months," concluded Joseph's mental status would improve with medication and alcohol abstinence, and assigned Schwendeman and Himpler's opinions limited probative weight. R. at 47. Nothing in their reports, however, established Joseph would be fit to work with abstinence and medication. See R. at 77, 954-64. Even after providing several months of medication and counseling, Schwendeman and Himpler assigned Joseph a GAF score of fifty. R.

---

[17] The result in Span further undermines the Commissioner's claim that failure to mention GAF scores was harmless. Here, the Commissioner attempts to sift through the record to find evidence supporting the ALJ's decision. The ALJ, however, failed to address the GAF evidence and the other evidence that supports a finding of disabled -- for example, the "extreme" and "marked" limitations noted by Drs. Weiss and Fischetto in their reports.

at 77.  Although Dr. Schwendeman and nurse practitioner Himpler may have noted certain improvements in Joseph from medication, their records do not support the ALJ's determination -- apparently based on his own speculation -- that treatment would permit Joseph to work.  See Span, 2004 WL 1535768, at *5-8 (remanding where treating psychiatrist noted plaintiff's improved condition with medication but still assigned a GAF score of fifty); see also Morales, 225 F.3d at 319 (instructing ALJ not to speculate or draw inferences regarding claimant's ability to return to work based on treatment notes indicating claimant's stability during treatment).

This error was not an isolated oversight.  The ALJ also ignored Dr. Weiss' report.  See R. at 36-49; Plaintiff's Brief at 6; Commissioner's Brief at 10-12.  Although Dr. Weiss noted Joseph had mild or moderate limitations in work-related functions, he also identified extreme and marked limitations in multiple areas.  R. at 390.  The ALJ was obligated to consider Dr. Weiss' report and, if he chose to discount it, explain why.  See Fargnoli, 247 F.3d at 41; Burnett, 220 F.3d at 121; Cotter, 642 F.2d at 704.  His failure to do so makes it impossible to determine how he assessed Dr. Weiss' report.

Similarly, the ALJ failed to explain aspects of Dr. Fischetto's report, instead summarizing only parts of them.  See R. at 43.  The ALJ omitted information from Dr. Fischetto's reports citing, inter alia, Joseph's "marked" limitations in work-related functions.  See R. at 881.  This omission justifies remand.

Because the ALJ failed to properly evaluate the relevant medical evidence and failed to mention or evaluate Joseph's GAF scores, his opinion was not supported by substantial evidence.[18]

---

[18] Joseph also requests a reversal and remand for calculation of benefits.  See Plaintiff's Brief at 12.  Such a finding is premature.  I may award benefits only where "substantial evidence

On remand, the ALJ must discuss the GAF scores and the reports by Drs. Weiss, Fischetto, and Schwendeman, and their effect upon Joseph's RFC and disability determination.

        2.        Joseph's Additional Claims

Joseph also alleges (1) the ALJ failed to properly evaluate her subjective complaints and (2) the vocational expert's testimony does not support the ALJ's finding that Joseph could have performed jobs such as packer and small parts assembler. See Plaintiff's Brief at 9-12.

Because I recommend Joseph's case be remanded based on the ALJ's failure to consider and analyze Joseph's GAF scores and other relevant medical evidence relating to her impairments, it is unnecessary to examine her additional claims. A remand may produce different results on these claims, making discussion of them moot. See Steininger v. Barnhart, No. 04-5383, 2005 WL 2077375, at *4 (E.D. Pa. Aug. 24, 2005) (not addressing additional arguments because ALJ may revise findings on remand). For example, review of Joseph's GAF scores could impact whether she meets a listed impairment at step three. See Watson, 2009 WL 678717, at *6.

Accordingly, I make the following:

---

on the record as a whole indicates that the claimant is disabled and entitled to benefits." Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted). The record in this case contains evidence supporting a finding of disability as well as evidence supporting a "not disabled" finding. As noted, the ALJ did not properly evaluate the relevant medical evidence and this case warrants remand for consideration of such evidence. I accordingly recommend that Joseph's request for reversal be denied.

## R E C O M M E N D A T I O N

AND NOW, this 26th day of April, 2012, it is respectfully recommended that Joseph's request for review be GRANTED and the matter be REMANDED to the Commissioner for further review consistent with this report and recommendation.  The Commissioner may file objections to this Report and Recommendation within 14 days after being served with a copy thereof.  See Fed. R. Civ. P. 72.  Failure to file timely objections may constitute a waiver of any appellate rights.  See Leyva v. Williams, 504 F.3d 357, 364 (3d Cir. 2007).

BY THE COURT:

  /s/ Timothy R. Rice
TIMOTHY R. RICE
UNITED STATES MAGISTRATE JUDGE